The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA

v.

Verna May JACK, Henry Jack, Jr., and
Frederick Damon McLemore.

Civ. A. No. 15444.

United States District Court,
W. D. Louisiana,
Shreveport Division.

April 27, 1971.

Neilson S. Jacobs, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for plaintiff.

Sydney B. Nelson, Pugh & Nelson, Shreveport, La., for Frederick D. McLemore.

Harvey P. DeLaune, Miller & De-Laune, Shreveport, La., for Verna May Jack and Henry Jack, Jr.

OPINION

BEN C. DAWKINS, Jr., Chief Judge.

The Prudential Insurance Company of America brings this interpleader action, pursuant to 28 U.S.C. § 1335, to determine the rightful beneficiary of life insurance proceeds. The action arises out of a $10,000 life insurance policy contracted in accordance with the provisions of the "Servicemen's Group Life Insurance Program" established pursuant to Subchapter III of Chapter 19, Title 38, United States Code (38 U.S.C. § 765 *et seq.*).

All relevant facts have been stipulated. Henry Jack, III, was the minor son of Verna May Jack and Henry Jack, Jr. Before entering the United States Marine Corps, Henry, III, became aware that he was the father of a child to be born to his fiancee, Ruth Deloris McLemore. In letters to his fiancee, after joining the Marines, he acknowledged in a signed letter that she was carrying his child and stated that he intended to marry her in June, 1969, upon completion of his basic training. However, on June 1, 1969, while in active service, he was killed. It is stipulated that Frederick Damon McLemore is the informally acknowledged illegitimate child of Henry Jack, III.

The sole issue before this Court is whether an illegitimate child is a "child" within the meaning of the Servicemen's Group Life Insurance Program.

The statute establishing the Program provides the precedence of beneficiaries, 38 U.S.C. § 770(a):

"(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing

received in the uniformed services prior to such death;

"Second, if there be no such beneficiary, to the widow or widower of such member of former member;

"Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

\* \* \*"

Henry, III, not having designated a beneficiary and there being no widow, the question presented is whether the parents, Verna May Jack and Henry Jack, Jr., or the illegitimate child, Frederick Damon McLemore, should recover the policy benefits.

There appears to be no jurisprudence directly in point as to whether an illegitimate is deemed a "child" within the context of the Servicemen's Group Life Insurance Program. The Act itself does not speak directly to this point. Counsel for the litigants each rely on purportedly analogous acts and judicial interpretations thereunder.[1]

The threshold and determining question, of course, is whether Congress, in enacting this insurance program, intended that a "child" include illegitimates.

Since legislative intent is controlling, a careful examination of the legislative history and background of the Program is appropriate. Congress, in enacting the Servicemen's Group Life Insurance Program, also attempted to provide "interim" coverage for those who were killed under specified conditions while in military service.[2] It provided a "death gratuity" benefit of $5,000 payable if the death occurred between January 1, 1957, and September 29, 1965—*the effective date of the Servicemen's Group Life Insurance Program*. By the nature of this "interim" coverage, its identity in point of time of enactment, and its similarity in coverage,[3] the "Death Gratuity" provisions and the Servicemen's Group Life Insurance Program must be read *in pari materia*.

Under the Death Gratuity Plan, Congress explicitly provided:

"(d) Any terms used in this section which are defined in sections 101 or 102(b) of title 38, United States Code, shall, for the purposes of this section, have the meanings given to them by such sections 101 or 102(b), *except* that (1) the term 'veteran,' as used in this section, includes a person who dies while in action, military, naval, or air service and (2) *the term 'child' shall not be limited with respect to age or marital status*." (Emphasis added.)[4]

1. Counsel for Frederick Damon McLemore relies primarily on Metropolitan Life Insurance Company v. Thompson, 368 F. 2d 791 (3d Cir. 1966), cert. den. sub nom. Thompson v. Thompson, 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967), which construed the Federal Emloyees Group Life Insurance Act, and held "child" included illegitimates.

Counsel for the parents relies primarily on the definitions of "child" provided in the National Servicemen's Life Insurance Act, 38 U.S.C. § 701(3), and the U. S. Government Life Insurance Act, 38 U.S.C. § 740 *et seq.*, which provides in effect that an illegitimate may be a beneficiary only if expressly designated.

2. Section 3 of Pub.L. 89–214, as amended by Pub.L. 89–730, § 6(a)–(d), 80 Stat. 1159. See 38 U.S.C. § 776 note (1971 Pocket Part).

3. See 1966 U.S.Code Congressional and Administrative News 3786 (Vol. 3). The relationship between the two is briefly stated:

"Last year Congress enacted Public Law 89–214 which established a group life insurance program for all active members of the uniformed services. It also provided a death gratuity benefit of $5,000 payable by the Veteran's Administration to the beneficiaries of a serviceman whose death resulted from action of hostile forces; an accident involving a military or naval aircraft; an explosion of an instrumentality of war; or extrahazardous service, if the death occurred from service performed during the period from January 1, 1957, to September 29, 1965 (the effective date of the servicemen's group life insurance program)."

4. Sec. 3 Pub.L. 89–214(3) (d), *supra*.

Section 101, Title 38, United States Code, provides (and did so at the time of enactment of the Death Gratuity statute) in relevant part:

"(4) The term 'child' means * * * a person who is unmarried and—

. "(A) who is under the age of eighteen years;

* * * * * *

and who is a legitimate child, a legally adopted child, * * * *or an illegitimate child but, as to the alleged father, only if acknowledged in writing signed by him,* * * or if he is otherwise shown by evidence satisfactory to the Administrator to be the father of such child * * *." (Emphasis added.) [5]

It readily is evident from this language, and by the nature and construction of the "Death Gratuity" provision, and the exceptions included when referring to Section 101, that Congress saw fit to reassess its definition of "child." In doing so, it provided, *inter alia*, that an illegitimate child could recover the proceeds of such a policy where there was written proof of his paternity such as here.

As noted, since the "interim" Death Gratuity Plan was an adjunct to the Servicemen's Group Life Insurance Plan, we must read the statutes *in pari materia*. To hold that a different definition of "child" is proper under the Servicemen's Group Life Insurance Plan than that clearly intended under the Death Gratuity Plan would be incongruous since the latter was intended to supplement the former (although in a limited manner).

Accordingly, we hold that Frederick Damon McLemore, as an acknowledged illegitimate, is the proper beneficiary; and judgment will be granted to that effect.

Exercising the equity powers of this Court, we order that, before the sums placed in the registry of this Court as proceeds of the insurance policy are disbursed, Ruth Deloris McLemore, natural mother of Frederick Damon McLemore, or another proper person, be required to take appropriate steps in the appropriate State Court to be appointed tutor (or tutrix) of said child *after furnishing adequate security* to protect the child's interests in the proceeds of the policy.

A proper decree should be presented.

---

5. It is recognized, of course, that because of the difference in administering the two programs parts of the definition are inappropriate. However, it is clear that the congressional intent was that properly acknowledged illegitimates should be considered a "child" within the scope of the Act.