PRESTON CANTRELL ET UX *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ET AL

5-5800                                                   477 S.W. 2d 484

Opinion delivered March 13, 1972

*Ben M. McCray,* for appellants.

*Evans, Farrar & Callahan,* for appellees.

LYLE BROWN, Justice. This is a suit to determine the disposition of the proceeds of a veteran's life insurance

[1]Ark. Stat. Ann. § 43-2706 (Repl. 1964) allowing interlocutory appeals by the State was repealed by Act 333 of 1941.

policy. The real contestants are the surviving parents of the veteran as opposed to the claim of Donya Dee Kilgore on behalf of her illegitimate child, she contending that the veteran was the father of the child. The chancellor held that the proceeds should go to the child and the parents of the veteran appeal.

In February 1968, Donya Dee Kilgore, a single girl, gave birth to a male child. She forthwith filed a complaint and affidavit in the Garland County Court alleging that Jerry Dale Cantrell was the father of the child. She asked for monthly support for the child and for her lying-in expenses. In June 1968 the cause came on for hearing, wherein young Cantrell executed and filed in that court an affidavit that he was the father of the child and was agreeable to paying support money and lying-in expenses. The affidavit was notarized by his attorney. Judgment was accordingly entered.

In January 1969 Jerry Dale Cantrell was inducted into the armed forces. He applied for, and was granted, a serviceman's life insurance policy in the principal sum of $10,000. He elected not to name a beneficiary but did designate that the proceeds be paid in thirty-six monthly installments. In the absence of a beneficiary, it was provided under the automatic features of the policy that the proceeds would go first, to the widow; second, to the child or children of the serviceman; and third, if no child or children, to the parents of the serviceman. Cantrell died in Vietnam.

The question shortly arose as to the disposition of the funds, the mother on behalf of the child laying claim thereto and the serviceman's parents claiming the money. Suit was started by The Prudential Insurance Company of America filing a bill of interpleader. They paid into the registry of the court all accrued sums and are so depositing the monthly accruals. Arkansas Bank & Trust Company of Hot Springs was designated as guardian of the child's estate. All proper parties are before the court.

Appellants, the parents of the veteran, argue under their first point that under our statutes and case law, this illegitimate child cannot inherit from the veteran. We

have a descent and distribution statute covering illegitimate children. Ark. Stat. Ann. § 61-141 (Repl. 1971). There having been no marriage between the parties, the child would not, under that statute, inherit from Jerry Dale Cantrell. The same is true under our holdings in *Bell* v. *Bell*, 249 Ark. 959, 462 S.W. 2d 837 (1971), and *Parker* v. *Hadley*, 227 Ark. 161, 296 S.W. 2d 391 (1956). This is not a case calling for the application of our laws of descent and distribution. We are dealing with a federal statute which, under the circumstances in this particular case, says the proceeds shall go to the child of the deceased veteran. 38 USCA § 770. Those jurisdictions of which we are aware which have treated the subject, have given the word "child" its natural meaning to include illegitimate as well as legitimate children. *Metropolitan Life Ins. Co.* v. *Thompson*, 368 F. 2d 791 (1966).

A New York statute provides that an illegitimate child inherits from its father if the court enters an order of filiation during the lifetime of the father. 17B McKinney § 4-1.2. In *Prudential Insurance Company of America* v. *Hernandez et al*, 314 N.Y.S. 2d 188 (1970), the veteran took out an insurance policy and did not name a beneficiary. Upon his death, a contest arose over the benefits of the policy as between two illegitimate children and the parents of the veteran. There had been no order of filiation entered during the lifetime of the father. The court waived aside the filiation requirement. "However, the better and more modern view is to abolish the unchosen birth given shackles of illegitimacy and to confer filial equality wherever possible." It was pointed out that in support of the birth registration of the children the veteran executed instruments acknowledging his paternity. The court said: "The application of the statute appears even more irrational when examined under the light of the unrefuted formal acknowledgments of paternity."

*Prudential Insurance Co.* v. *Jack et al*, 325 F. Supp. 1194 (1971), is in point. Like the case before us, this was a contest between the parents of the serviceman and his illegitimate child. It was stipulated that the serviceman informally acknowledged that he was the father of the child. The court reviewed the legislative history of the servicemen's insurance program and concluded that it was

the legislative intent that the term "child" include illegitimate children if the recognition of parenthood was made in writing. Such an acknowledgement was made in a letter to the child's mother. The state law of descent and distribution of the state of residency was not mentioned in the opinion and we conclude it was not even argued.

*Metropolitan Life* v. *Thompson, supra,* is in point. That was a contest over the proceeds of a federal employee's life insurance policy as between the mother of the deceased and an illegitimate child. The child was illegitimate under New York law. The court held that the meaning of the term "child," in the absence of provisions to the contrary, was a federal question. It was specifically held that the local laws of inheritance had no application; and it concluded that the word "child" as used in the act and under ordinary connotation, included an illegitimate child.

The other point for reversal is that the trial court erred in permitting the introduction of an affidavit introduced in the bastardy proceedings in the Garland County Court. There is no merit to that contention. When the serviceman was apprised of the instigation of the bastardy proceeding he hired an attorney. That affidavit, to which we have heretofore referred, was made a part of the county court record. The affidavit and the judgment of the county court (which has never been attacked) were introduced in the proceedings in this case. We are cited no reason why those complete proceedings should not have been introduced. The affidavit actually amounted to sworn testimony before the county court and was made a part of the county court record with the full knowledge of the serviceman's employed counsel. In fact his attorney notarized it.

The decree is affirmed.