Nang BECK *v.* Robert BECK and Susan BECK

CA 81-201                                        625 S.W. 2d 538

Court of Appeals of Arkansas
Opinion delivered December 9, 1981

*Andrews & Westerfield,* for appellant.

*Stephen E. Safly* and *Burris & Berry,* for appellees.

LAWSON CLONINGER, Judge. The issue presented on this appeal is whether a retired serviceman's designated beneficiary in a Veterans' Group Life Insurance policy shall prevail over the claim of the serviceman's children, when the beneficiary was designated contrary to a divorce settlement incorporated into a judicial decree entered by a state court.

The trial court awarded the proceeds of the policy to the insured's children, appellees Robert Beck and Susan Beck, and we must reverse.

Rollan C. Beck, the insured, was divorced from Delores Beck in Pulaski County Chancery Court on November 20, 1975, while Rollan Beck was in the United States Air Force. The couple had two children, appellee Robert Beck, now 23 years old, and appellee Susan Beck, now 21. The parties negotiated a property settlement, which was incorporated into the divorce decree, which provided that Rollan Beck would keep his service life insurance policies in effect, naming Robert and Susan as irrevocable beneficiaries.

Subsequent to the divorce Rollan Beck married appellant Nang Beck, a native of Thailand. Rollan Beck and appellant adopted a young Filipino boy, Joey, who is now four years old. Rollan Beck retired from service on December 1, 1979, and at that time obtained, pursuant to 38 U.S.C. § 777, a $20,000 Veterans' Group Life Insurance policy in which he designated his then-wife, appellant Nang Beck, beneficiary. Rollan Beck died on May 24, 1980. By interpleader action, the Prudential Insurance Company of America admitted that it issued the group policy in question and deposited the proceeds of the policy into the registry of the court subject to the court's disposition.

The federal statutes by which the Servicemen's Group Life Insurance, SGLI, (a successor program to National Service Life Insurance, NSLI), and Veterans' Group Life Insurance, VGLI, programs were established set out the

order of precedence by which the policy benefits are paid. Subsection (d) of 38 U.S.C. § 777 states:

> Any amount of Veterans' Group Life Insurance in force on any person on the date of his death shall be paid . . . pursuant to the provisions of Section 770 of this title.

Subsection (a) of § 770 states:

> Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid . . . to the person or persons surviving at the date of his death, in the following order of precedence: first, to the beneficiary or beneficiaries as the member or former member may have designated by writing prior to death . . .

Subsection (g) of 38 U.S.C. § 770 states in part:

> Payments of benefits due or to become due under Servicemen's Group Life Insurance or Veterans' Group Life Insurance made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

In a case dealing with an NSLI policy, *Wissner* v. *Wissner*, 338 U.S. 655 (1980), the United States Supreme Court held that claims premised on state community property law could not defeat a serviceman's beneficiary designation. The Court ruled that portions of the controlling federal statute give servicemen the absolute right to designate their beneficiaries; are a valid exercise of the congressional power over national defense; and displace contrary state property law.

The case of *Cantrell* v. *Prudential Insurance Company of America*, 252 Ark. 70, 477 S.W. 2d 484 (1972), involved a suit to determine the disposition of the proceeds of a VGLI policy between the surviving parents of the veteran and his

illegitimate child. Cantrell did not designate a beneficiary. The Court applied 38 U.S.C. § 770 (a), which directs that in the absence of a beneficiary the proceeds of the policy are to be paid first to a surviving widow, second to the child or children of the serviceman, and third, if there are no children, to the parents of the serviceman. At that time Arkansas law provided that an illegitimate child could not inherit from an alleged father. The Court stated:

> This is not a case calling for the application of our laws of descent and distribution. We are dealing with a federal statute, which, under the circumstances in this particular case, says the proceeds shall go to the child of the deceased veteran.

The facts in *Ridgway* v. *Ridgway*, decided by the United States Supreme Court on November 10, 1981 and reported in 50 USLW 4006, are almost identical to the facts of the case now before this Court. In *Ridgway* the serviceman and his first wife were parents of three minor children and in a divorce decree granted by a Maine court, which apparently incorporated a property settlement agreement between the parties, the serviceman was ordered "to keep in force the life insurance policies on his life now outstanding for the benefit of the parties' three children . . ." Within four months of the divorce the serviceman remarried and immediately changed the designated beneficiary of his SGLI policy to the one specified "by law," which was his new wife.

In reversing the Supreme Judicial Court of Maine, which had imposed a constructive trust on the proceeds of the policy for the benefit of the minor children, the United States Supreme Court held that the controlling provisions of federal law prevail over and displace inconsistent state law. The Court stated that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." Additionally, the Court held that the imposition of a constructive trust upon the insurance proceeds is inconsistent with the anti-attachment provisions of 38 U.S.C. § 770 (g), stating that any diversion of the proceeds of the policy by means of a court-imposed constructive trust would operate as a forbidden "seizure" of those

proceeds. The Court quoted with approval the statement made in *Hisquierdo* v. *Hisquierdo,* 439 U.S. 572 (1979):

> Like anti-attachment provisions generally [citing *Wissner*], it ensures that the benefits actually reach the beneficiary. It pre-empts all state law that stands in its way. It protects the benefits from legal process '[n]otwithstanding any other law . . . of any State' . . . It prevents the vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy. 439 U.S., at 584.

The Court in *Ridgway* recognized the "unpalatable" result in that case, but observed that a result of that kind may be avoided if Congress chooses to avoid it. Thus far, however, the Court states, Congress had insulated the proceeds of insurance issued pursuant to the Servicemen's Group Life Insurance Act from attack or seizure by any claimant other than the beneficiary designated by the insured or the one first in line under the statutory order of precedence.

We must reverse the decision of the trial court and remand it with directions to award the proceeds of the policy held in the registry of the court to appellant Nang Beck.

Glaze and Cracraft, JJ., concur.

GEORGE K. CRACRAFT, Judge, concurring. I concur with the result reached by the majority but only because the United States Supreme Court in its *Ridgway* decision has left us no alternative. Although fully bound by that decision, I am not prohibited from questioning its soundness. As a veteran of two wars, it is easy for me to understand the congressional purpose in affording certain measures of protection to our soldiers and sailors while in active service or benefits after their discharge. Moreover, I have little difficulty in accepting the proposition that Congress has a legitimate interest in making the proceeds of life insurance issued to such person payable in a uniform manner throughout the country. I recognize to achieve this interest may warrant a rejection of varying state laws of descent and distribution or

distinctions between state laws governing community property and dower interests.

I have extreme difficulty, however, in believing that Congress, in its zeal for uniformity, intended to permit former servicemen the right to violate otherwise valid and binding contractual rights or to ignore valid court orders with respect to those rights. *Ridgway* declares that a serviceman may ignore contractual legal obligations owed another with impunity and the fruits of that misconduct shall inure to the benefit of a third person not a party to the contract. Nor can I accept the proposition that in its zeal Congress intended to completely abrogate universally accepted laws of contract, equity and basic justice, and thereby give validity and approval to rights conceived in inequity and unconscionable conduct.

I am authorized to state that Judges Glaze and Cooper join in this concurring opinion.